OSCAR FROMMEL et al. *vs.* GEORGE L. FOSS.

Aroostook.    Opinion December 3, 1906.

*Contracts.    Sales.    Non-delivery.    Justification.    Options.    Same must be seasonably exercised.*

The defendant, in February 1904, agreed to deliver to the plaintiffs ten carloads of potatoes at New York City in the following March; and by another contract in the same February to deliver ten other cars of potatoes at New York City in the same month of March; and by another contract in the same February, to deliver fifteen other cars of potatoes to the plaintiffs at New York City in the same March or the first of April. And in the last case, the proposition accepted was to deliver in March if the defendant could get the cars. All the potatoes were to be shipped on the plaintiffs' orders, and were to be shipped from Aroostook County. Up to the night of March 24, only five cars had been ordered out by the plaintiffs, and they, one each day from March 22. On March 24, the defendant refused to perform the contracts, for the alleged reason that the plaintiffs had not seasonably ordered out the potatoes. *Held:*

1. That the plaintiffs having the option when to order out the potatoes, it was their duty seasonably to order the shipments, so that the defendant could secure the cars, prepare them for use, load them, and deliver in New York, in the month of March, all the potatoes contracted to be delivered there under the first two contracts.

2.   That the evidence shows clearly that the plaintiffs failed to order out the potatoes in season for the defendant to obtain cars, fit them, load them and deliver the potatoes in New York in March, it being practically impossible to do so in the time after March 24.

3.   That time was of the essence of the contract, and that the defendant had a right to be permitted to deliver the potatoes in March, and as the plaintiffs failed to afford him the opportunity so to do, he was justified in refusing to perform.

4.   That as to the third contract, the defendant had the right to deliver the potatoes at New York in March if cars could be had ; that he was entitled to have an opportunity seasonably to try to secure cars; and that it was the duty of the plaintiffs, by giving orders seasonably, to afford the defendant a reasonable opportunity to perform his contract in March, or to endeavor to perform it. This they failed to do.

5.   By reason of the failure of the plaintiffs to perform their clear duty, the defendant was justified in cancelling the orders, and upon the evidence, the action for the breaches of the three contracts, by way of non-delivery, is not sustainable.

On motion and exceptions by defendant.   Motion sustained. Exceptions not considered.

Action of assumpsit to recover damages for the alleged breaches of contracts to deliver to the plaintiffs certain carloads of potatoes which they had bought of the defendant.   The plaintiffs were potato dealers in New York City, and the defendant was a potato dealer in Aroostook County, Maine.

The declaration in the plaintiffs' writ contained three counts which are as follows:

"In a plea of the case for that on the 17th day of February, 1904, at Fort Fairfield, in said county, to wit:—At Caribou, in consideration that the plaintiffs, at the special request of the said defendant, had bought of the said defendant a large quantity of potatoes to wit:—Ten car loads of the variety known as 'Green Mountain' potatoes, at the price of $2.70 per barrel for each and every barrel thereof, to be delivered at New York City, in the State of New York, in March, then next ensuing, and had then and there promised said defendant to accept all the said potatoes, and to pay for the same at the price aforesaid, the said defendant then and there promised and agreed to deliver the said ten carloads of 'Green Mountain' potatoes to the plaintiffs at New York City, in the State of New York, in March, then next ensuing, at the price of $2.70 per

barrel, as aforesaid, and the plaintiffs aver that they, on the 24th day of March, 1904, requested the said defendant to deliver them the said ten carloads of potatoes, as aforesaid, in accordance with the terms of his agreement, and the plaintiffs aver that they were then and there ready and willing to accept the said potatoes and pay for the same in accordance with the terms of their agreement and were then and there ready, and offered to accept and receive the said potatoes from the said defendant. Yet the said defendant then and there refused, and though often thereto requested has ever since neglected and refused, to deliver to the said plaintiffs the said potatoes in accordance with the terms of his said agreement.

"Also for that on the 18th day of February, 1904, at Fort Fairfield, in said county, to wit : — At Caribou, in consideration that the plaintiffs, at the special request of the said defendant, had bought of the said defendant a large quantity of potatoes, to wit : — Five cars of the variety known as 'Green Mountain' potatoes, and five cars of the variety known as 'Hebron' potatoes, at the price of $2.70 per barrel for each and every barrel thereof, to be delivered at New York City, in the State of New York, in March, then next ensuing and had then and there promised said defendant to accept all the said potatoes, and to pay for the same at the price aforesaid, the said defendant then and there promised and agreed to deliver the said five cars of 'Green Mountain' potatoes, and the said five cars of 'Hebron' potatoes, to the plaintiffs at New York City, in the State of New York, in March, then next ensuing, at the price of $2.70 per barrel, as aforesaid, and the plaintiffs aver that they, on the 24th day of March, 1904, requested the said defendant to deliver them the said ten carloads of potatoes, as aforesaid, in accordance with the terms of his agreement, and the plaintiffs aver that they were then and there ready and willing to accept the said potatoes and pay for the same in accordance with the terms of their said agreement, and were then and there ready and offered to receive the said potatoes from the said defendant. Yet the said defendant then and there refused, and though often thereto requested has ever since neglected and refused, to deliver to the said plaintiffs the said potatoes in accordance with the terms of his said agreement.

"Also, for that on the 24th day of February, 1904, at Fort Fairfield, in said County, to wit: — At Caribou, in consideration that the plaintiffs, at the special request of the said defendant had bought of the said defendant a large quantity of potatoes, to wit:— Ten carloads of the variety known as 'Green Mountain' potatoes, and five carloads of the variety known as 'Hebron' potatoes, at the price of $2.75 per barrel for each and every barrel thereof, to be delivered at New York City, in the State of New York, in March, .or the 1st of April, then next ensuing, and had then and there promised said defendant to accept all the said potatoes and to pay for the same at the price aforesaid, the said defendant then and there promised and agreed to deliver the said ten cars of 'Green Mountain' potatoes, and the said five cars of 'Hebron' potatoes,.to the plaintiffs at New York City, in the State of New York, in March, or the 1st of April, then next ensuing, at the price of $2.75 per barrel, as aforesaid, and the plaintiffs aver that they, on the 24th day of March, 1904, requested the said defendant to deliver them the said fifteen carloads of potatoes, as aforesaid, in accordance with the terms of his agreement, and the plaintiffs aver that they were then and there ready and willing to accept the said potatoes and pay for the same in accordance with the terms of their said agreement, and were then and there ready, and offered to receive the said potatoes from the said defendant. Yet the said defendant then and there refused, and though often thereto requested has ever since neglected and refused, to deliver to the said plaintiffs the said potatoes in accordance with the terms of his said agreement." .

Writ dated November 22, 1904. Ad damnum, $5000. Plea, the general issue. Tried at the December term, 1905, of the Supreme Judicial Court, Aroostook County. Verdict for plaintiffs for $2,550. The defendant then filed a general motion for a new trial. Also during the progress of the trial the defendant took exceptions to several rulings made by the presiding Justice. The exceptions were not considered by the Law Court.

The case appears in the opinion.

*Herbert T. Powers and Powers & Archibald,* for plaintiffs.

*Ira G. Hersey and Geo. H. Smith,* for defendant.

SITTING: WISWELL, C. J., WHITEHOUSE, SAVAGE, POWERS, SPEAR, JJ.

SAVAGE, J.    Action for alleged breaches of contracts to deliver to the plaintiffs certain carloads of potatoes which they had bought of the defendant.    The plaintiffs were potato dealers in New York City, and the defendant was a potato dealer in Aroostook County in this State, whence the potatoes were to be shipped.    The plaintiffs in three counts in their declaration set up breaches, by way of failure of delivery, of three separate contracts of the defendant, all made on different days in February, 1904; — one "to deliver the said ten carloads of Green Mountain potatoes to the plaintiffs at New York City .  .  .  .  in March, then next ensuing, at the price of $2.70 per barrel;" another, "to deliver the said five cars of Green Mountain potatoes, and the said five cars of Hebron potatoes, to the plaintiffs, at New York City  .  .  .  .  in March then next ensuing, at the price of $2.70 per barrel;" and a third, "to deliver the said ten cars of Green Mountain potatoes and the said five cars of Hebron potatoes to the plaintiffs at New York City,  .  .  .  .  in March or the 1st of April, then next ensuing, at the price of $2.75 per barrel."    The defendant, not denying the various negotiations which are relied upon by the plaintiffs and which were all by letter or telegram, claims that the effect of the negotiations was to merge the several negotiations into a single contract for the sale and delivery to the plaintiffs at New York in March 1904,· of thirty-five cars of potatoes of the varieties named, to be shipped from Aroostook County in this State.    In any event, the defendant did not ship any potatoes covered by these contracts to the plaintiffs, but on March 24, 1904, by telegram, cancelled the plaintiffs' orders, and refused to deliver the potatoes.    The verdict was for the plaintiffs for substantially all the damages claimed under all three counts, and the case comes before us on the defendant's motion for a new trial, and exceptions.

We think the evidence sustains the plaintiffs' claim that there were three separate and independent contracts, although after they were made, the parties in some respects treated them as one.    The defense is that the contracts called for a delivery of the potatoes at New York in the month of March, 1904; that the plaintiffs had the

option of saying when the potatoes should be shipped, and therefore that it was their duty to order the shipments seasonably so that the defendant could procure cars, prepare them for use, and ship the potatoes to New York within the time limited by the contracts. And the defendant says that the plaintiffs failed seasonably to order the shipments of the potatoes so that he could perform his contract within the month, and that, inasmuch as the time of the delivery was of the essence of the contracts, he was excused from the performance of the contracts, and was justified in cancelling them. In other words, he says that the plaintiffs' failure or neglect to order the shipments seasonably put it out of his power to perform his contracts.

Although the correspondence is silent on the point, the parties do not disagree that under the contract, perhaps from the very nature of the business, the shipments were to be at the option of the plaintiffs. They had the right to say when the defendant should ship the potatoes. This being so, it was the duty of the plaintiffs to direct the shipments in season for the defendant to perform his part of the contract within the time limited. He had a right to insist on being permitted to perform his contract within that time. We think time was of the essence of the contract. The defendant could not be driven to postpone the delivery of the potatoes, and thereby be subject to loss by decay or waste, or as the case shows, to the burden of taxes which would be assessed against him, if the potatoes were in his possession in this State on or after April 1st. A very large part of the testimony in the case is devoted to an attempt to show that when potatoes in Aroostook County are sold in quantities of twenty cars or over for delivery in a month certain, it is the custom of buyers to order shipments early in that month, so that the delivery may be accomplished during the month. But the custom shown does not effect the question here. It is no more than the law annexes to contracts like these. The law says the shipments must be ordered seasonably, so as to enable the shipper to deliver seasonably. We think the custom goes no further.

The parties do not agree as to whether, under the contracts, the defendant was bound to deliver at New York, or only to ship from

Maine, within the time stated, and as this difference may be of importance we will consider the contracts in detail. The terms, "March delivery" and "March shipment" are used in the correspondence somewhat indiscriminately. February 15, 1904, the defendant wired the plaintiffs at New York, "Will sell five cars Mountains [Green Mountain potatoes] in sacks of hundred sixty-eight pounds two seventy March delivery." To this on the following day the plaintiffs replied,— "If your price is delivered will buy five or ten cars. Advise quick." And the defendant answered on the same day,— "Will deliver ten cars at price quoted." This completed the contract, though on the same day the plaintiffs by letter confirmed their order, "for March delivery." We think this was a contract for a delivery of the cars, in March, at New York.

On February 17, 1904, the defendant wired the plaintiffs,—"Can you use ten cars more Hebrons and Mountains two seventy five prompt on March delivery?" On the next day, as appears by a confirmatory letter of that date, the plaintiffs wired the defendant that they "would buy five each Mountains and Hebrons, March delivery, at $2.70." On the same day the defendant answered by wire,—"Will book five cars Hebrons, five cars Mountains two seventy March delivery. Will ship the car Bliss two seventy five." This acceptance completed the second contract, now in question. The reference to the car of Bliss potatoes grew out of another order, not important here. The next day, February 19, the plaintiffs wired the defendant,—"We have your confirmation of Hebrons, Mountains, March shipment and Bliss spot shipment." And in a letter of the same date to the defendant, they wrote, "We have your wire confirming five each Hebrons and Mountains at $2.70 for March delivery and one Bliss quick shipment at $2.85. We now have you booked for 15 cars Mountains at $2.70, and 5 Hebrons at $2.70, all for March shipment delivered New York, also one car Bliss at $2.85 for spot shipment. These goods are to come forward via Metropolitan Line to New York any time during March as ordered out by us."

Independently of the letter, which was confirmatory of the telegraphic contract, we think that the term "March delivery" in the

contract, read in the light of existing conditions, should be held to contemplate a delivery in March at New York. That the plaintiffs so understood it appears clearly from their letter. Though in the letter they used the term "March shipment" as well as "March delivery," their understanding is apparent when they say, "These goods are to come . . . *to New York any time in March,* as ordered out by us." Furthermore in their declaration, the plaintiffs allege that the defendant agreed to deliver the potatoes "to the plaintiffs at New York City . . . in March, then next ensuing." The plaintiffs' interpretation of the contract at that time was undoubtedly the true one.

Before we consider the rights and duties of the parties under these two contracts, it will be expedient to state the third. On February 22, 1904, the plaintiffs wired the defendant,—"How many more Hebrons and Mountains will you book us for March shipment . . ." The defendant replied the same day,—"Will ship ten cars more Mountains five Hebrons March or first of April delivery. March if can get cars. You advance me One thousand to secure them with at two seventy-five." Two days later the plaintiffs answered by wire,—"Would not make any advances on potatoes would buy fifteen cars offered if you care to book." In answer to this the defendant wired on the same day,—"Will book the fifteen cars as per wire without any advance order, order out as early in March as possible on account of shortage of cars." This completed the third contract, and we think it contemplated that the potatoes should be delivered in New York in March if the defendant could get the necessary cars; otherwise in the early part of April.

Then followed a correspondence concerning all the potatoes. In a letter from the defendant to the plaintiffs dated February 24, confirming his last telegram, and recapitulating the amounts of all the contracts, "making 35 cars in all," the defendant wrote,—"Please order them out as early in March as possible for it is hard to get cars just as you want them." On February 27 the plaintiffs wrote the defendant, "in regard to the 35 cars booked for us in all for March shipment, as follows: "In ordering them out we will arrange so as to make it convenient for us both." March 4 the defendant

wrote: "About when do you think you will order out some Hebrons or Mountains?" and the plaintiffs replied March 8, saying that "it will be the end of this month before we expect to order any out. At the present our market is well supplied and we do not expect to order any goods out until conditions here show some improvement." Again, March 9 the defendant inquired, "When do you think you will order out some Hebrons or Mountains," and the plaintiffs replied March 11, "we expect to wire you about the middle of next week to begin to let them come forward. We will advise you the early part of the week by wire just when to start shipping." March 17 the defendant wired:— "Must start loading your stock at once will have to pay 5 cents per sack tax April 1st." March 18 the plaintiffs wrote,— "We expect to begin to have our goods come forward next week. Just as soon as we hear from you what you mean by five cents tax after April 1st, we will know just what to advise you." March 19, the defendant wired, "Have four cars loaded wire shipping directions." March 22, three days later, the plaintiffs wrote, "We have wired you to let five cars come forward, one each day. On such of our potatoes as we may not order out for March, whatever the correct expense on them may be, we naturally will have to stand our part of it." On March 23, the defendant wired,— "Had to move stock and have sold," and on March 24,— "Shall cancel your orders see letter." Later on the same day the plaintiffs wired,— "We will not allow cancellation as we accepted your tax proposition on all potatoes not shipped in March, also ordered out four cars you had ready. You can ship as many as you can balance of March."

Now with reference to the first two contracts, we have already stated that the defendant was bound to deliver the potatoes at New York in March and had the right to so deliver them, and that the plaintiffs, though they had the option as to when cars should be ordered out were bound to exercise that option reasonably, with reference to the defendant's rights. And it was their duty to exercise their option in season for the defendant to deliver the potatoes at New York in March. It was their duty to take into account the situation, at least so far as it existed between them and

the defendant, for they knew that he had thirty-five cars to deliver, twenty in March in any event, and fifteen more if cars could be obtained. The case shows that cars in such numbers are not easily obtained, and that the plaintiffs were advised of this difficulty. It also appears that cars when secured had to be specially fitted or lined by carpenters, at that season of the year, to protect the potatoes from the cold. And of course they had to be loaded. The procuring, fitting and loading the cars naturally had to be done after they were "ordered out." And it also appears that the average time of carriage from Aroostook County to New York is about eight days.

In view of these circumstances, we think that the delay of the plaintiffs in ordering out cars was clearly unreasonable. Up to the night of March 24, only five cars had been ordered out, and they, one each day from March 22, the time when the order was received. The evidence is satisfactory that it was, after March 24, practically impossible then to procure, fit and load the cars, and ship the potatoes to New York in that month. It was not possible for the defendant then to perform even the first two contracts for twenty cars. The fault of the plaintiffs then having rendered it impossible for the defendant to perform these two contracts according to their terms, we think he was justified in declining to perform. *Rhoades* v. *Cotton*, 90 Maine, 453. Nor is the result affected by the fact as claimed by the plaintiffs that they accepted the defendant's tax "proposition." The truth is, the defendant made no "tax proposition." He merely called attention to the fact that there would be a liability to tax April 1, and this was done to induce the plaintiffs to greater diligence in ordering. The willingness of the plaintiffs to pay the tax could not affect the defendant's rights, which he appears neither to have abandoned nor waived.

Under the third contract, the defendant was under the duty and had the right to deliver the potatoes at New York in March, if cars could be had, otherwise in April. But March was to be preferred, if cars could be had. It was plainly for the defendant's interest to perform the contract in March, if he could. We think he should have had an opportunity seasonably to try to secure cars. It is manifestly

impracticable to try to secure cars from a railroad company, especially when cars are scarce, unless the shipper knows approximately when they will be needed.   And in this case the defendant could not know, until he received orders from the plaintiffs.   He had no reasonable opportunity to perform his contract in March, or to endeavor to perform it.  That he had no opportunity was the fault of the plaintiffs. Accordingly, as in the case of the other contracts, he was justified in declining to perform.

Upon these principles, the verdict is clearly wrong and must be set aside.   It is unnecessary to consider the exceptions.

*Motion for a new trial sustained.*

*Verdict set aside.*